MCV, INC., Plaintiff–Appellant,

v.

KING–SEELEY THERMOS COMPANY,
Defendant–Appellee.

No. 88–1328.

United States Court of Appeals,
Federal Circuit.

March 27, 1989.
Rehearing Denied May 12, 1989.

Alan L. Barry, Wallenstein, Wagner, Hattis & Strampel, Ltd., Chicago, Ill., argued, for plaintiff-appellant. With him on the brief were, Robert E. Wagner and Amy L.H. Rockwell.

Robert J. Lepri, Trizna & Lepri, Chicago, Ill., argued, for defendant-appellee. With him on the brief was Daniel J. Fumagalli. Keith Miller, Harness, Dickey & Pierce, Birmingham, Mich., argued, for defendant-appellee. With him on the brief was Robert A. Dunn.

Before FRIEDMAN and MAYER, Circuit Judges, and NICHOLS, Senior Circuit Judge.

## OPINION

MAYER, Circuit Judge.

MCV, Inc., appeals the judgment of the United States District Court for the Northern District of Illinois, No. 86–C–4180 (Feb. 10, 1988), dismissing MCV's complaint for a determination of inventorship and co-ownership, and for correction of inventorship of U.S. Patent No. 4,600,148. The district court held MCV equitably estopped from asserting a co-inventorship claim, and not entitled to co-inventorship status. We agree that MCV is equitably estopped, and

affirm on that basis; we do not address the co-inventorship claim except to the extent necessary to our discussion of subject-matter jurisdiction.

## Background

In early 1981, MCV, a marketing communications venture founded by Thomas Simon and Mark Wagner, approached the Halsey Taylor Company (Halsey Taylor), an operating division of King–Seeley Thermos Company (King–Seeley), seeking to establish a business relationship. Halsey Taylor primarily manufactures and sells water coolers. MCV offered an agreement which included a provision that Halsey Taylor would retain all rights to any patents that might eventuate from a relationship with MCV. Halsey Taylor rejected the offer.

In April of 1981, a revised agreement was reached between Halsey Taylor and MCV, pursuant to which MCV was to prepare and present a product plan and development program for Halsey Taylor. The agreement contained no provision for Halsey Taylor's retention of patent rights. However, in a memorandum entitled "Supplement To MCV's Marketing Services Proposal," Dennis Heyden, Halsey Taylor's product manager, stated that "Wagner and Simon confirmed that Halsey Taylor would retain patent and marketing rights to anything developed as a result of their involvement with us."

By contract on December 1, 1981, MCV became a marketing representative of Halsey Taylor, in which capacity Simon recommended new products and markets to Halsey Taylor. Of relevance here, Simon recommended that Halsey Taylor manufacture a "drainless water cooler," and suggested that two gooseneck faucets be mounted on top of the cooler, one for hot water, the other for cold. By November of 1982, Halsey Taylor had decided to seek a patent on the drainless water cooler. Simon conferred with Heyden on drafts of the claims, and the next month suggested to Heyden that he, Simon, be included as a co-inventor on the application. Heyden responded that company policy prohibited the naming of non-employees on company patents. Simon thereupon said that the exclusive right to market the water coolers was more valuable to MCV than patent rights, and that he would "help[ ] in any way [h]e could to facilitate the submission of the ... patent."

Through King–Seeley, Halsey Taylor filed U.S. patent application, Serial No. 542,437, on October 17, 1983, disclosing and claiming a topside dispensing drainless water cooler. Patent No. 4,600,148 ('148 patent) issued on the invention July 15, 1986, naming Doyle Raymer, Michael Eveland, and Heyden, all Halsey Taylor employees, as joint inventors.

During 1984, Halsey Taylor marketed the drainless water coolers, which featured a single topside gooseneck faucet capable of dispensing both hot and cold water. MCV represented Halsey Taylor in some of these sales, and received commissions accordingly. Relations between MCV and Halsey Taylor became acrimonious, however, and on May 30, 1985, MCV formally terminated discussion of a new contract with Halsey Taylor.

This case began with MCV's complaint filed on June 10, 1986, claiming antitrust violations, breach of contract and confidential relationship, fraudulent misrepresentation, non-disclosure and concealment, and trademark violations. By stipulation, the complaint was first amended on July 22, 1986, to identify the proper corporate entity, King–Seeley, as the defendant. (To avoid confusion, we refer to Halsey Taylor throughout, recognizing that its parent, King–Seeley, prosecuted the patent application and defended this suit.) After close of discovery, the complaint was again amended on August 11, 1987. The second amended complaint included two counts based on federal law: one for a determination of co-inventorship and co-ownership and for correction of the '148 patent, under the provisions of 35 U.S.C. § 256; the other alleging violations of the Lanham Act.

The district court granted Halsey Taylor's motion for summary judgment, holding in relevant part that Simon was equitably estopped from asserting his alleged status as a co-inventor on the '148 patent because he knowingly acquiesced in the omission of his name from the application

for four years. The court entered judgment dismissing the federal counts, and relinquished its pendent jurisdiction over and dismissed the remaining state claims. MCV appeals only on the co-inventorship count.

### Discussion

### I. *Jurisdiction*

The first question is jurisdiction: Is a suit in district court for determination of co-inventorship and correction of a patent under 35 U.S.C. § 256[1] permissible, and is it an action "arising under" the patent laws for purposes of 28 U.S.C. § 1338(a) so that we have jurisdiction under 28 U.S.C. § 1295(a)(1)? The answer is yes.

*Christianson v. Colt Operating Corp.,* 486 U.S. ——, 108 S.Ct. 2166, 2173, 100 L.Ed.2d 811, 7 USPQ2d 1109, 1113 (1988), held that section 1338(a) jurisdiction extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." Reviewing the count of MCV's complaint on appeal with these principles in mind, it is apparent that both criteria are met.

■ MCV's cause of action is created by section 256 which explicitly authorizes judicial resolution of co-inventorship contests over issued patents, although not quite as explicitly as sections 145 and 146, for example, speak of judicial access. Before the enactment of section 256, patentees and their assignees committed inventorship errors at their peril; misjoinder or nonjoinder of an inventor rendered the patent invalid. Section 256 affords the opportunity to correct the patent. S.Rep. No. 1979, 82nd

Cong., 2nd Sess. at 7 (1952), U.S.Code Cong. & Admin.News 1952, pp. 2394, 2401. If the patentees and their assignees agree, correction can be had on application to the Commissioner. In the event consensus is not attained, however, the second paragraph of section 256 permits redress in federal court. *See* P.J. Federico, Commentary on the New Patent Act, 35 U.S.C.A. 1 (1954) ("If [the parties] do not concur, the correction can only be made on order of a court.... [S]ection 256 ... gives a court authority to order correction").

The statute prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard. If that is done, there is subject-matter jurisdiction in the district court over a dispute raising solely a joint inventorship issue among contending co-inventors. *See Iowa State University Foundation v. Sperry Rand Corp.,* 444 F.2d 406, 170 USPQ 374 (4th Cir.1971); *Dee v. Aukerman,* 625 F.Supp. 1427, 228 USPQ 600 (S.D.Ohio 1986). *Dee* and *Iowa State* helpfully review the legislative history and the "broad remedial purposes of Congress in enacting § 256 in 1952," which we subscribe to but do not repeat here. *Dee,* 625 F.Supp. at 1428, 228 USPQ at 601; *see Iowa State,* 444 F.2d at 410, 170 USPQ at 377.

■ It is also the case that "relief necessarily depends on resolution of a substantial question of federal patent law." *Christianson,* 486 U.S. at ——, 108 S.Ct. at 2173, 7 USPQ2d at 1113. Although we do not reach it, the dispositive issue on the merits would be the definition of the invention, as to which no fewer than three theories can be gleaned from the record. MCV argues that "patent claim language defines the invention." Asserting that this places "undue emphasis" on "naked language," Halsey Taylor counters that resort must be

---

1. § 256. Correction of named inventor

Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

had to the prosecution history and prior art, because the "invention" inheres in those elements of the claims that impart patentability. Charting still a third course, the district court apparently was of the view that the invention consists only of those claim elements that individually would not "have been obvious within the meaning of 35 U.S.C.A. § 103." This implicates at least several provisions of the Patent Act: section 116 for joint inventorship; section 112 for claim interpretation; and section 102(f) for originality of conception. Moreover, the patent laws are a "necessary element" of MCV's well-pleaded complaint. Unlike in *Christianson* where "[t]he patent-law issue, while arguably necessary to at least one theory under each [antitrust] claim, is not necessary to the overall success of either claim," 486 U.S. at ——, 108 S.Ct. at 2174, 7 USPQ at 1114, MCV's co-ownership arises from and depends solely on the patent law issue of inventorship.

*Christianson* also affirmed that "in order to demonstrate that a case is one 'arising under' federal patent law 'the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws.'" *Christianson*, 486 U.S. at ——, 108 S.Ct. at 2173, 7 USPQ2d at 1113 (quoting *Pratt v. Paris Gas Light & Coke Co.*, 168 U.S. 255, 259, 18 S.Ct. 62, 64, 42 L.Ed. 458 (1897)). *See also Wyden v. Commissioner of Patents and Trademarks*, 807 F.2d 934, 231 USPQ 918 (Fed.Cir.1986); *Dubost v. United States Patent and Trademark Office*, 777 F.2d 1561, 227 USPQ 977 (Fed.Cir.1985). In this case, not only is co-inventorship at issue, but if it were found, the court would then have to tackle the question of whether nonjoinder was "without deceptive intention" within the meaning of section 256. One answer would permit correction of the patent; the opposite answer could invalidate it.

■ Finally, we note that MCV states that it seeks a "declaratory judgment for the determination of inventorship and co-inventorship of U.S. Patent 4,600,148 ... under 28 U.S.C. § 2201 (Declaratory Judgment Act, § 2201)." This, however, is not a declaratory judgment action, and principles of jurisdiction applicable to declaratory suits are not implicated. *See generally Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 6 USPQ2d 1685 (Fed.Cir.1988). "A suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne and Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). MCV's cause of action is for correction of inventorship on the '148 patent, and is created by section 256. An essential element under section 256 is a judicial determination of co-inventorship, a "declaration," as it were, that Simon was a co-inventor of the drainless water cooler. The parties understood this to be the nature of MCV's count at issue, and conducted the litigation accordingly. That MCV misstated the nature of its suit was harmless and is not fatal to its otherwise well-pleaded cause of action.

## II. *Equitable Estoppel*

Satisfied on jurisdiction, we agree with the district court that MCV's co-inventorship claim is barred by estoppel; accordingly we do not reach the merits of the inventorship issues. Our consideration of the doctrine of equitable estoppel as a defense to a claim of co-inventorship is guided by what we have said in the infringement context.

Adjusting the definitional statement in *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1573, 4 USPQ2d 1939, 1941 (Fed.Cir. 1987), for our purposes: Equitable estoppel may apply when there is (1) unreasonable and inexcusable delay in filing suit, (2) prejudice to the defendant as a result of the delay, (3) affirmative conduct by the party against whom estoppel is asserted inducing the belief that it had abandoned its claim, and (4) detrimental reliance by the party asserting estoppel. "[E]stoppel depends on the facts of a particular case and is a matter within the court's discretion which will not be set aside absent a showing of abuse of discretion." *Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d 1544, 1553, 5 USPQ2d 1779, 1786 (Fed.Cir. 1988).

In this case, the district court granted summary judgment against Simon because

he knew he had not been named as an inventor on the patent application; for four years failed to protest; and told Halsey Taylor that possessing some right to the patent was unimportant to him, what he cared about was securing the right to market the water cooler. This would satisfy conditions (1) and (3), delay and affirmative misleading conduct, set out in *Hottel*.

MCV first takes issue with the court's conclusion that these material facts are not in dispute, saying that Simon did not know, but merely suspected, that Halsey Taylor filed a patent application for the drainless water cooler invention, and that he was not given access to the contents of the application. At a minimum, it asserts there is a genuine question of fact about Simon's knowledge, especially since a patent application is by law, 35 U.S.C. § 122, and by regulation, 37 C.F.R. § 1.14, preserved in secrecy.

We are not persuaded. Simon's deposition testimony is unequivocal that he knew Halsey Taylor was seeking a patent: "Dennis [Heyden] told me in, I believe, November of 1982." And Simon was aware of what Halsey Taylor was claiming in the application: "Dennis would bring me the claim sheets, . . . and we would go over [them]." It is unclear whether this argument was squarely presented to the district court, but the record admits of no doubt about what Simon knew.

The district court's conclusion that MCV acquiesced in Halsey Taylor's failure to name Simon as a co-inventor is similarly unassailable. Again, Simon's deposition testimony is central. When Heyden told him of the purported company policy not to name outsiders, Simon responded: "as long as we own[ ] the sole rights to market that product and ha[ve] that as an exclusive product, the marketing rights [are] far more valuable to us than the patent rights."

■ But MCV responds that this testimony does not mean it acquiesced, only that it decided not to pursue the claim of co-inventorship while commercial relations between MCV and Halsey Taylor were ex-

tant. Regardless of the reasoning behind the decision, Simon knew that Halsey Taylor was seeking a patent but declined to pursue his co-inventorship claim. To the extent MCV would justify its delay because an earlier assertion might have jeopardized business dealings with Halsey Taylor, the excuse is insufficient. *Cf. Lane & Bodley Co. v. Locke*, 150 U.S. 193, 201, 14 S.Ct. 78, 80, 37 L.Ed. 1049 (1893) (patentee barred by laches from asserting a claim of infringement against his employer where excuse for delay was that he "preferred for prudential reasons, to receive a salary from the defendant rather than to demand a royalty"); *see also* 4 Chisum, *Patents*, § 19.05[2][b][vi] (1987) ("The patent owner's desire to maintain good relations with the infringer as a customer, supplier or employer is generally held not to constitute a sufficient excuse for delay in filing suit").

Simon's suggestion to Heyden in December 1982 that he be named as a co-inventor on the application does not alter our view. In infringement situations, an assertion of right followed by silence on the part of the patentee may give rise to an estoppel if the patentee's silence is sufficiently misleading " 'to induce the alleged infringer to reasonably infer that the patentee has abandoned his patent claims.' " *Jamesbury*, 839 F.2d at 1554, 5 USPQ2d at 1787 (quoting *Hottel*, 833 F.2d at 1574, 4 USPQ2d at 1941). We see no reason for a different rule here. MCV not only remained silent about co-inventorship after Simon's December 1982 discussion with Heyden, but affirmatively represented to Halsey Taylor that it would assist "in any way [it] could" to obtain the patent, and urged Halsey Taylor to "enforc[e] *your* patent rights" against asserted copiers of its product. (Emphasis added.)

■ MCV also argues that equitable estoppel does not apply because Halsey Taylor did not rely to its detriment on Simon's acquiescence, apparently treating conditions (2) and (4) of *Hottel*, prejudice and detriment, as the same thing. And in any event it suggests that detrimental reliance is irrelevant in view of the command of 35 U.S.C. § 116.[2] According to MCV,

2. In the part MCV believes pertinent, 35 U.S.C. § 116 (Supp.1988) provides: "When an inven-

section 116 requires an applicant to identify all known inventors of the claimed subject matter to the Patent and Trademark Office, and therefore precludes the patentee, as a matter of law, from ever relying on the acquiescence of a known omitted inventor, detriment or no detriment. This argument begs the question.

MCV charges that Halsey Taylor "violated the law ... by prosecuting an application with known defective inventorship," and baldly asserts that the "facts demonstrate" that Halsey Taylor knew Simon to be an inventor of the drainless water cooler. But, MCV does not identify support in the record for its assertions; general, conclusory or cryptic arguments are insufficient. Our review shows no evidence that would cause us to question the district court's summary judgment.[3]

In his deposition, named co-inventor Raymer was asked if Simon contributed any ideas to the invention. He responded, "In my judgment no." Similarly, when asked if he had "any specific recollection as to any suggestion that Mr. Simon made relative to the drainless cooler," another co-inventor, Eveland, said, "No." In his deposition, Heyden said, "I credit Tom [Simon] with being the major proponent of putting goosenecks on this particular design up top." But this is not evidence Heyden believed Simon to be a co-inventor. That Heyden recognized Simon's suggestion is not the same as supposing that Simon was a co-inventor of the water cooler, particularly when, as Simon himself said, goosenecks had been mounted on water coolers for a long time, and Halsey Taylor had been using them on other cooler models. Heyden had not discussed inventorship with the attorney who prosecuted the '148 patent. In fact, his only discussion of the subject was with Eveland, a conversation prompted by, and limited to, Eveland's belief that "I [Heyden] should be [on the application] because of my input on some of the features of it."

We also have in mind the December 1982 exchange in which Heyden informed Simon of Halsey Taylor's purported policy on listing inventors on company patents. If this was Halsey Taylor's policy, we do not endorse it; if, as Halsey Taylor says, it was customary in the industry where marketing and sales representatives often give general advice about products and sales techniques, we are troubled. But the point here is that Simon acquiesced; he did not then or reasonably soon thereafter challenge the "policy." And Heyden's statement says nothing about Halsey Taylor's thinking about Simon's co-inventorship status. Indeed, Heyden said that he never "suggest[ed] to Tom Simon that his name should be on the patent."

What all this shows is that MCV has failed to support its allegation that Halsey Taylor believed Simon was a co-inventor and knowingly left his name off the application. Halsey Taylor relied on its own interpretation of inventorship, whether correct or not, and Simon's silence when it prosecuted the patent application. On the facts of this case, where Simon knew Halsey Taylor was seeking a patent, and knew what was being claimed, it was incumbent upon him timely, explicitly and tenaciously to apprise Halsey Taylor of his purported inventorship so it could be maturely considered. It is impermissible for him to lie low for four years and then invoke a claim of erroneous inventorship against the patent when the matter could have been resolved from the start. Estoppel is an equitable concept; it is not defeated by an inequitable attempt to invoke a statutory requirement. The question is not whether section 116 was violated; the question is whether in these circumstances MCV can now have Simon named as an inventor. The answer is no.

MCV's invocation of section 256 at this late date would be to Halsey Taylor's profound detriment because the result could be to invalidate the patent and jeopardize the business Halsey Taylor had developed

---

tion is made by two or more persons jointly, they shall apply for patent jointly and each make the required oath...."

3. On this basis we also reject MCV's unsupported contention that Halsey Taylor is guilty of "unclean hands" for having prosecuted the '148 patent with "known defective inventorship."

in the treated water, point-of-use, drinking equipment market, a market in which Halsey Taylor did not operate prior to its development of the drainless water cooler. *Cf. Jamesbury,* 839 F.2d at 1554, 5 USPQ2d at 1787 (uncontroverted evidence of capital investments made by alleged infringer constitutes material prejudice sufficient to support grant of summary judgment on laches defense). And correction of the patent could lead to payment of royalties or perhaps loss of the type of marketing right Halsey Taylor now enjoys. The district court did not abuse its discretion in estopping MCV in the face of its misleading nonchalance about its putative right to co-inventorship, a nonchalance on which Halsey Taylor relied.

We also see no merit in MCV's argument that estoppel was not timely raised. We agree with the district court that in the circumstances it was sufficient to address the issue in the motion for summary judgment because MCV had sufficient prior notice of it.

### Conclusion

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.