**STEWART & STEVENSON SERVICES, INC., Plaintiff,**

v.

**SERV–TECH, INC., Defendant.**

**Civ. A. H–90–3651.**

United States District Court, S.D. Texas, Houston Division.

June 18, 1992.

Jeffrey W. Tayon, Houston, Tex., for plaintiff.

Brendan D. Cook, Gordon T. Arnold, Houston, Tex., for defendant.

## OPINION ON SUMMARY JUDGMENT

LYNN N. HUGHES, District Judge.

### 1. *Introduction.*

Serv–Tech owns United States Patents 4,805,653 and 4,856,545. Stewart & Stevenson sued Serv–Tech to name two Stewart & Stevenson employees as co-inventors of the patents. Stewart & Stevenson is estopped from asserting its claims; a take nothing judgment will be entered.

### 2. *Water Blasting Equipment.*

In mid–1984, Richard W. Krajicek designed water blasting equipment for cleaning the bundles of tubes that make up heat exchangers. A heat exchanger is a piece of industrial equipment commonly used in refineries to cool fluids. It is made up of a cluster of parallel pipes that allow air to circulate around the pipes to cool the fluid as it passes from one end of the bundle of tubes to the other. The bundles of tubes in heat exchangers must be cleaned occasionally to maintain the efficiency of the cooling process. Water blasting equipment that cleans the outside surface, or shell, of the tube bundles is commonly referred to as shell-side cleaning equipment. Water blasting equipment that cleans the interior of the tubes of the bundle is called tube-side cleaning equipment.

The shell-side cleaning equipment that Krajicek designed includes a boom that pivots from a fixed pedestal located on the back of a truck. At the end of the boom is a nozzle to control the water spray. The boom can be pivoted to move the nozzle

from bundle to bundle and can be extended telescopically to direct the spray of water the full length of a tube bundle.

### 3. *Background.*

In the late summer or early fall of 1984, Krajicek approached Stewart & Stevenson about building the water blasting equipment that he designed. In February 1985, the parties signed a secrecy agreement. Serv–Tech agreed to give Stewart & Stevenson certain proprietary information about Krajicek's design so that Stewart & Stevenson could evaluate the information to build a prototype of the equipment for testing. Stewart & Stevenson then constructed a prototype.

In September 1984, Tommy Raymond, a branch support salesman with Stewart & Stevenson, met with Krajicek and Serv–Tech's patent attorney, John Kirk, to discuss the project. The purpose of the meeting was to begin the patenting process. After that meeting, another Serv–Tech patent attorney, Carl Ries, made two trips to Stewart & Stevenson's plant to inspect the equipment being constructed. On one trip, Raymond accompanied Ries during the inspection. On the other trip, Ries received special permission from James Stewart, III, to take photographs in the plant, and Stewart accompanied Ries during the inspection. On both occasions, Ries said that he was working on patent applications for the equipment.

Late in 1984 or early in 1985, Serv–Tech's attorneys began drafting two patent applications for the water blasting equipment. On September 9, 1985, they filed the first application with the Patent and Trademark Office. Patent 4,805,653, entitled "Mobile Articulatable Tube Bundle Cleaner," was issued on February 21, 1989, to Krajicek and his associate, Robert R. Cradeur, as co-inventors. On November 7, 1988, Serv–Tech filed a divisional application based on the '653 patent. Patent 4,856,545, entitled "Multi–Lance Tube Bundle Cleaner," was issued to Krajicek and Cradeur on August 15, 1989.

In July 1986, Raymond wrote Krajicek informing him that Smith Energy Services had approached Stewart & Stevenson about refurbishing some Smith equipment. According to Raymond, Smith had inquired about Serv–Tech's equipment and marketing concepts. Raymond said in the letter that Stewart & Stevenson had advised Smith that the information it sought was proprietary information of Serv–Tech and that Stewart & Stevenson could not divulge it. Raymond offered his opinion to Krajicek that Smith would not try to infringe Serv–Tech's inventions, but he warned that Krajicek should keep an eye on Smith.

### 4. *Claims.*

In this suit, filed in November 1990, Stewart & Stevenson asserts that its employees Tommy Raymond and John Rush, a consultant hired for the Serv–Tech project, provided at least part of the inventive genius that led to the two Serv–Tech patents. In its complaint, Stewart & Stevenson requests this court to order the Commissioner of Patents and Trademarks to issue a certificate naming Rush and Raymond the true inventors or co-inventors of the '653 and '545 patents. Serv–Tech has asserted that Krajicek and Cradeur are the true inventors and that Rush and Raymond were merely technicians, whose contributions were mechanical.

### 5. *Estoppel.*

■ Stewart & Stevenson is estopped from asserting that Raymond and Rush are co-inventors; the merits of the claim will not be reached. *See MCV, Inc. v. King–Seeley Thermos Co.,* 870 F.2d 1568, 1571 (Fed.Cir.1989). "Estoppel depends on the facts of a particular case and is a matter within the court's discretion which will not be set aside absent a showing of abuse of discretion." *Id.* Most patent cases interpreting the defense of equitable estoppel arise when an accused infringer attempts to bar a patent owner from enforcing a valid patent. *See, e.g., A.C. Aukerman Co. v. R.L. Chaides Const. Co.,* 960 F.2d 1020 (Fed.Cir.1992); *Meyers v. Brooks Shoe, Inc.,* 912 F.2d 1459 (Fed.Cir.1990). In this case, the patentee is the defendant and the party raising estoppel. The same

estoppel analysis applied in an infringement context is also used in a co-inventorship context. *MCV*, 870 F.2d at 1571.

 The defense of equitable estoppel has three elements. "[1] The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. [2] The other relies upon that communication. [3] And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct." *A.C. Aukerman*, 960 F.2d at 1041. Although commonly raised together, laches and estoppel are two independent defenses. Unlike laches, unreasonable delay prior to filing suit is not an element of estoppel. *Id.* at 1042.

A. *Misleading Communication.*

To establish misleading communication, Serv–Tech must show that Stewart & Stevenson's statements or acts communicated something in a misleading way. Stewart & Stevenson's conduct must have supported an inference that it did not intend to assert a co-inventorship claim against Serv–Tech. Serv–Tech must also know, or reasonably be able to infer, that Stewart & Stevenson had known of Serv–Tech's patent application activities for some time. Finally, Stewart & Stevenson's misleading conduct could have been misleading inaction, if the inaction, combined with other factors about the relationship between the parties, supports the inference that Stewart & Stevenson's claim of co-inventorship was abandoned. *Id.* at 1042.

Stewart & Stevenson filed this suit in November 1990, several years after it learned that Serv–Tech was seeking patents on the equipment that Stewart & Stevenson was constructing. During that period, neither Rush, Raymond, nor anyone else at Stewart & Stevenson ever inquired into the scope of the patents being claimed, and they never asserted that they, or anyone else at Stewart & Stevenson, made contributions that rose to the level of co-inventorship. To determine the length of delay in an infringement suit, the court looks to the time at which the plaintiff knew, *or in the exercise of reasonable diligence should have known,* of the defendant's alleged infringing actions. *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1326 (5th Cir.1980). The same rule applies in suits to determine co-inventorship. *MCV*, 870 F.2d at 1572.

Stewart & Stevenson even failed to obtain assignments of Rush and Raymond's rights until after Serv–Tech sued Stewart & Stevenson in state court for misappropriation of trade secrets. Only then did Stewart & Stevenson pursue these inventorship claims. At least by early 1985, Stewart & Stevenson knew that Serv–Tech was seeking patents on the equipment. Through a simple inquiry, well within the bounds of reasonable diligence, Stewart & Stevenson could have known the subject matter of those applications exactly. Stewart & Stevenson clearly delayed in filing suit; the only question is whether the delay was of five or of six years. In either event, the delay was unreasonable. Though not an independent element of estoppel, an unreasonable delay in filing suit may be evidence of misleading conduct. *A.C. Aukerman*, 960 F.2d at 1042.

Stewart & Stevenson not only failed to assert any claims of ownership after learning that Serv–Tech was pursuing the patents, but it also actively protected the secrecy of Serv–Tech's proprietary information. Raymond's letter to Krajicek in 1986 implied a conscious abandonment of any rights in Serv–Tech's inventions. Raymond also wrote product specifications expressing that the devices were "the design concepts of Serv–Tech." Stewart & Stevenson's active conduct induced Serv–Tech to believe that no Stewart & Stevenson employee claimed an interest in the inventions. Since Stewart & Stevenson is now claiming the invention, Stewart & Stevenson's original conduct was misleading, as a matter of law.

B. *Reliance.*

The second element of estoppel is reliance. Serv–Tech must show that, in taking some action, it substantially relied on Stewart & Stevenson's misleading con-

duct. *A.C. Aukerman,* at 1042. Stewart & Stevenson's inaction combined with Serv–Tech's ignorance of Stewart & Stevenson's claims is evidence that Serv–Tech relied on the absence of competing or joint claims in its prosecution of the patents. To prove reliance, Serv–Tech must show that its relationship with Stewart & Stevenson lulled it into a sense of security in going ahead with its own actions. *Id.*

Serv–Tech established the relationship with Stewart & Stevenson. Serv–Tech commissioned Stewart & Stevenson to build a prototype of its design of water blasting equipment. At no time during that relationship did Stewart & Stevenson assert claims in the prototype. By letter and specifications written by Stewart & Stevenson, Stewart & Stevenson expressed its position that it was protecting Serv–Tech's proprietary information. Stewart & Stevenson retained no claims in the invention, either as originally drawn or as modified in the construction of the prototype. Because of this sense of security, Serv–Tech proceeded with its patent applications and its overall business plan about the water blasting equipment.

C. *Material Prejudice.*

Serv–Tech has to prove that it would be materially prejudiced if Stewart & Stevenson is allowed to proceed with the suit. Material prejudice may be evidentiary, economic, or both. *Id.* at 1043. Evidentiary prejudice may arise because of a "defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id.* at 1032. "Economic prejudice may arise where the defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Id.* at 1033. Prejudice and delay are additive so that a clear showing of one necessitates a lesser showing of the other.

Serv–Tech's management and marketing approach has been to emphasize its patented proprietary technology. Serv–Tech has a reputation in the community for its technological leadership, and its goodwill in the market place is partially based on that reputation. Serv–Tech has made a sizeable capital investment developing the technology, product, and market that uses the patents in issue.

Serv–Tech could have kept its inventions secret. Because of its secrecy agreement with Stewart & Stevenson, Serv–Tech could have maintained its inventions as trade secrets and never disclosed those inventions to the public. Instead, Serv–Tech chose to disclose those inventions to the public through the patent process. Based on its belief that Krajicek and Cradeur were the sole inventors and that it, as assignee, was the sole owner of the patents, Serv–Tech has made capital investments and numerous business decisions including important public disclosure of the technology.

Stewart & Stevenson performed a service for Serv–Tech, and, in performing that service, it came in contact with and may have contributed to Serv–Tech's proprietary information. Stewart & Stevenson never asserted a claim to the proprietary information of Serv–Tech or its additions, much less a claim as co-inventors. Stewart & Stevenson raised this issue only after it was sued by Serv–Tech in state court for misappropriating the trade secrets. To raise a claim of co-inventorship five years after the fact and under these circumstances borders on malice.

6. *Validity.*

A patent is presumed valid, and the burden of raising and proving invalidity is on the party attacking the patent. 35 U.S.C. § 282 (1991). In deciding this case, the issue of validity was not raised and was not considered. Krajicek and Cradeur are presumed to be the only true inventors of the '653 and '545 patents, and those patents are presumed to be valid. Serv–Tech's counterclaim for declaratory relief about its ownership of the '653 and '545 patents

requires no consideration, and it will be dismissed.

### 7. *Conclusion.*

Because Stewart & Stevenson is estopped from asserting co-inventorship of the '653 and '545 patents, on Serv–Tech's motion for summary judgment, Stewart & Stevenson will take nothing by its action, and Serv–Tech's counterclaim for declaratory relief will be dismissed.