**COMPAQ COMPUTER CORPORATION**
Plaintiff

v.

**ERGONOME, INC., Stephanie L. Brown and Thomas Mowrey,**
Defendants

Nos. CIV.A.H–97–1026,
CIV.A.H–98–3159.

United States District Court,
S.D. Texas,
Houston Division.

April 1, 2002.

Michael O. Sutton, Locke Liddell et al., Houston, TX, for Compaq Computer Corp.

Arnold Anderson Vickery, Arnold Anderson et al., Houston, TX, Paul F. Waldner, III, Waldner & Assoc., Houston, TX, Martin R. Gold, Rubinbaum et al., New York City, Charles K. Kebodeaux, Beaumont, TX, Stephen M. Kramarsky, Thomas E.L. Dewey, Dewey Pegno et al., New York City, for Ergonome, Inc., Stephanie L. Brown, Thomas W. Mowrey.

Richard P. Keeton, Mayor Day Caldwell & Keeton, Houston, TX, for Gold Farrell & Marks.

Kent Arlan Rowald, Bracewell & Patterson, Houston, TX, for Vaden Eickenroht & Thompson, LLP, Felsman Bradley Vaden Gunter Dillon, LLP.

Kent Arlan Rowald, Houston, TX, pro se.

FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING LACHES AND EQUITABLE ESTOPPEL

HARMON, District Judge.

In these consolidated actions, the Defendants have asserted that Compaq Computer Corporation ("Compaq") infringed certain limited components of their copyright in the HAND Book. The jury found that any copying was *de minimis* and that Compaq was entitled to the fair use defense. In addition, Compaq has asserted the defenses of laches and equitable estoppel. Those issues have been tried to the Court by agreement of the parties because they are equitable in nature. Both parties have submitted proposed Findings of Fact and Conclusions of Law on these issues. Compaq has moved to submit additional evidence on the issue of laches and equitable estoppel, and the Court has determined that the motion is well taken and will consider the additional evidence submitted.

After reviewing the record, the evidence submitted on these issues, and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law regarding laches and equitable estoppel.

### FINDINGS OF FACT

As an alleged willful copyright infringer, Compaq's conduct is subject to scrutiny. The Court has scrutinized Compaq's actions and finds that Compaq has acted equitably throughout this litigation. Its factual and legal positions have been well founded. The jury found that Compaq was entitled to the defenses of *de minimis* and fair use. Moreover, the Court entered judgment as a matter of law on the issue of willful infringement. The Court has evaluated the credibility of Compaq's witnesses and found them to be credible.

On November 11, 1994 Cynthia Purvis, an employee of Compaq, provided to Stephanie Brown and her husband Thomas Mowrey a copy of Compaq's 1994 Safety & Comfort Guide. That same day Brown reviewed Compaq's 1994 Safety & Comfort Guide during a sales presentation with Compaq representatives in Houston, Texas. Brown testified that she became "very upset" because she believed that Compaq was infringing her copyright. Tr. Vol. II, p. 85 ll. 9–15. Neither Brown nor Mowrey brought their belief that Compaq was infringing Brown's copyright to Compaq's attention on that day. Tr. Vol. II, p. 85, ll.16–25.

Compaq had, as of November 11, 1994, announced its Safety & Comfort Guide, but had not yet begun to distribute the Guide. The 1994 Guide was not distributed until the very end of December 1994. Tr. Vol. III p. 21, ll. 5–17. Both Brown and Mowrey knew that Compaq would be distributing the 1994 Safety & Comfort Guide and that Compaq would continue to distribute it in the future. Tr. Vol. IV, p. 95, ll. 6–14. Despite this knowledge, neither Brown nor Mowrey said anything to

Compaq concerning infringement until Mowrey raised the issue in a letter dated December 10, 1996, more than two years after the alleged infringement came to the notice of Brown and Mowrey.

If Compaq had known in November 1994 that Brown and Mowrey would claim infringement, Compaq could have modified its 1994 Guide in an attempt to avoid the allegations of copyright infringement. Dru Kuhner, a Compaq employee, testified that changes could have been made by simply sending different files to be printed. Purvis also testified that changes could have been made within a day or so simply in an attempt "to keep the peace." It was certainly possible to make changes to the 1994 Guide before it was printed in quantity and distributed in late December 1994.

After the November 11, 1994 meeting both Brown and Mowrey had contacts, individually and together, with Compaq. First Brown wrote Purvis at Compaq an "amiable" letter dated December 8, 1994, as a follow-up to the November 11, 1994 meeting. (Plaintiff's Exhibit 169). Brown told Purvis in the letter that Ergonome had a new price for its software KeyMoves that might work for Compaq. Brown said nothing in the letter concerning infringement. As a response to this letter, Brown and Mowrey were invited back to Houston for a meeting with Compaq. The meeting was set on January 7, 1995 and was attended by a number of Compaq employees, including Ann Moore, a product manager. Moore stated at that meeting that she did not believe anyone would use the software unless they were injured. (Plaintiff's Exhibit 173). This was acknowledged to be an unfavorable comment by Mowrey. Tr. Vol. IV, p. 67, ll. 10–25, p. 68, ll. 1–2. Despite this unfavorable comment neither Brown nor Mowrey said anything about the potential infringement. Tr. Vol. IV, p. 93, ll. 21–25, p. 94, ll. 1–5.

There was no contact between Compaq and Ergonome during February, March, April, May, and June 1995. Tr. Vol. IV, p. 70, ll. 10–24. On or about July 6, 1995 Mowrey telephoned Purvis to re-initiate contact with Compaq. In that conversation Mowrey asked again if there was a possibility for a business arrangement with Compaq. Tr. Vol. IV, p. 74, ll. 18–21, p. 72, ll. 4–20. Purvis responded by telling Mowrey that there was a new Compaq division in California that handled software. She told Mowrey that she would inquire whether there was a possibility for Ergonome to meet with the people in that business division. Purvis made inquiries and determined the appropriate person to contact. She telephoned Mowrey on July 20, 1995 and gave him Brad Jung's name. Tr. Vol. IV p. 73, ll.22–25, p. 74, 1 1. Mowrey then contacted Jung and traveled to California to demonstrate the Key-Moves software to Jung and another Compaq employee, Cary Fulbright. Tr. Vol. IV, p. 75, ll. 10–15 (Plaintiff's Exhibit 214, 220, 221).

In the next few months Mowrey continued to contact Compaq about its interest in the KeyMoves software as an implementation on the Presario line of computers. Mowrey understood that Compaq had a two-step process to determine whether to implement any software onto the Presario line. Tr. Vol. IV, p. 77, ll. 6–19 (Plaintiff's Exhibit 224, 232). Mowrey was never told that either portion of the two-step process had been completed. Tr. Vol. IV, pp. 77, l. 17 through pp. 81, l. 10.

In February 1996, Mowrey learned that Compaq would not be implementing any ergonomic software onto its Presario line of computers for the release that was to come out in June 1996. (Plaintiff's Exhibit 232). Between July 20, 1995 and February 1996 Mowrey never mentioned any potential infringement. The first mention

by Ergonome, Brown, or Mowrey to Compaq of their belief that Compaq had infringed the HAND Book was Mowrey's letter dated December 10, 1996, in which he demanded that Compaq take a license for its alleged infringement. Tr. Vol. IV, pp. 93, ll. 21 through pp. 94, l. 1.

Defendants' silence on the potential infringement is particularly egregious in light of their claimed actual damages of hundreds of millions of dollars. During 1995 and 1996 Mowrey was aware that Compaq's sales were increasing on the order of forty percent per year, which he understood to be a significant incremental increase in sales, yet he and Brown and Ergonome stood mute in the face of their knowledge of the increasing Compaq sales and their belief that Compaq was infringing.

Their excuse is that they were concerned that if they voiced their belief their potential for making a deal with Compaq would be destroyed. Tr. Vol. IV, p. 94, ll. 6–17. The evidence in the case shows, however, that Compaq and Ergonome were never close to a deal. Mowrey testified that making a deal with Compaq was more important that notifying Compaq of the alleged infringement. Their excuse for failure to notify is not valid. Tr. Vol. IV, p. 94, ll. 6–17.

The delay materially prejudiced and injured Compaq. Had Compaq known of the supposed infringement, it could have modified its 1994 Safety & Comfort Guide to have eliminated any issue of copyright infringement. In 1996 Compaq began developing a revised Safety & Comfort Guide, against which the Defendants initially asserted a copyright infringement claim. This claim was subsequently dropped. The fact that Compaq could develop a non-infringing Guide in 1996 is evidence of its ability to have avoided the alleged infringement in 1994 in order to avoid liability earlier.

In addition Compaq has been prejudiced as a result of the delay in its inability to produce some evidence. Compaq presented evidence of faded memories from witnesses, including Brown herself. Another Compaq witness, Doug James, had a faded memory, as did Emily Perlman, Sylvia Ramos, and Mowrey. Tr. Vol. IV, p. 157, ll. 14–24 (Plaintiff's Exhibit 339).

In the circumstances, the silence of Brown and Mowrey concerning their belief that Compaq was infringing constitutes a misleading silence. Compaq certainly relied upon that silence because it had no opportunity to take affirmative action to avoid the alleged infringement. Compaq was materially harmed, both economically and from an evidentiary standpoint.

### Conclusions of Law

#### A. Laches

 Compaq bears the ultimate burden of proving laches by a preponderance of the evidence. To invoke a laches defense Compaq must show (1) that Ergonome delayed filing suit for an unreasonable and inexcusable length of time from the point when Ergonome knew or reasonably should have known of its claim against Compaq and (2) Ergonome's delay materially prejudiced or injured Compaq. *Goodman v. Lee*, 78 F.3d 1007, 1014 (5th Cir.1996).

Material prejudice to Compaq may be either economic, that is, loss of monetary investments, incurring damages that might otherwise have been avoided by an earlier suit, or evidentiary, that is, preventing the accused party from presenting a full and fair defense to the merits. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1034 (Fed.Cir.1992) (*en banc*); *Altech Controls Corp. v. E.I.L. Instruments, Inc.*, 33 F.Supp.2d 546, 553 (S.D.Tex.1998), *aff'd in part, rev'd in part on other grounds*, 8 Fed.Appx. 941, 2001

WL 487603 (Fed. Cir. May 2 2001), unpublished.

Under both the facts and the law Compaq is entitled to the defense of laches.

## B. Equitable Estoppel

█ Laches focuses upon the reasonableness of the delay in bringing suit and the seriousness of the prejudice to the accused infringer. Equitable estoppel "focuses on what the [accused infringer] has been led to reasonably believe from the [claimant's] conduct." *Aukerman,* 960 F.2d at 1034. "Where there has been contact or a relationship between the parties during the delay period which may give rise to an inference that the [claimant] has abandoned its claim against [the accused infringer], the facts may lend themselves to analysis under principles of equitable estoppel, as well as laches." *Id.* When equitable estoppel applies, all relief on all claims in a suit may be absolutely barred. *Id.* at 1041. *Cf. Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,* 616 F.2d 1315, 1325 (5th Cir.1980).

█ For an equitable estoppel defense the accused infringer must show that (1) the claimant, usually with knowledge of the true facts, through misleading conduct, including silence when there is an obligation to speak, leads the accused infringer to reasonably infer that the claimant does not intend to enforce its rights against the alleged infringer, (2) the alleged infringer relies upon that conduct or communication, and (3) the accused infringer would be materially harmed if the claimant were later permitted to assert a claim inconsistent with his earlier conduct. *Aukerman,* 960 F.2d at 1041; *Studiengesellschaft,* 616 F.2d at 1325; *cf, e.g., Scholle Corp. v. Blackhawk Molding Co., Inc.,* 133 F.3d 1469, 1471, 1473 (Fed.Cir. 1998). "Delay in filing suit may be evidence which influences the assessment of whether [the claimant's] conduct is mis-

leading but is not a requirement of equitable estoppel." *Aukerman,* 960 F.2d at 1042. The defense of equitable estoppel may be asserted even when the claim is brought within the statute of limitations period because unreasonable delay prior to filing suit is not an element of equitable estoppel. *Cf. Stewart & Stevenson Svcs. Inc. v. Serv.-Tech Inc.,* 794 F.Supp. 202, 205 (S.D.Tex.1992), *aff'd* 996 F.2d 318, 1993 WL 107419 (Fed.Cir.1993)

In the instant case Compaq has satisfied all three of the elements. Brown and Mowrey admitted that they believed Compaq had infringed their copyright as early as November 11, 1994, but led Compaq to believe that there was no intent to enforce their rights because they said nothing. Compaq relied upon Brown and Mowrey's silence by continuing to distribute its Guides. Compaq would be materially harmed if Brown, Mowrey, and Ergonome were permitted to assert their claims.

The Court concludes that in light of the circumstances, Compaq is entitled to both the defense of laches and equitable estoppel. Compaq has met its ultimate burden with respect to both of these defenses. The Court further finds that under the facts and equities of this case Compaq should be allowed to assert these defenses and that Compaq is not liable for any damages that might otherwise have arisen with respect to the Defendants' claims of copyright infringement.

To the extent that any findings of fact should properly be designated a conclusion of law and vice versa, that mischaracterization shall not affect the determination of the Court.

## AMENDED FINAL JUDGMENT

Both actions consolidated in this case, Civil Action 97–1026 and Civil Action No. 98–3159, came on for trial before the Court and a jury, and the issues having been

duly tried and the jury having duly rendered its verdict, it is

**DECLARED** that Defendant Stephanie Brown is the alter ego of the Defendant Ergonome, Inc. for the purposes of this Action; and it is

**DECLARED** that Plaintiff Compaq Computer Corporation's *Safety & Comfort Guides* **DO NOT INFRINGE** on Defendant Ergonome, Inc., Stephanie L. Brown, and Thomas Mowrey's (collectively referred to as "Ergonome") *The HAND Book;* and Compaq is entitled to the defenses of laches and equitable estoppel; and it is

**ORDERED** that Defendant Ergonome take nothing, that Ergonome's actions be dismissed on the merits, and Compaq recover from Ergonome Compaq's costs, including, pursuant to Title 17 United States Code Section 505 its attorneys fees in the amount of Two Million, seven hundred sixty-five thousand, twenty-six and 90/100 Dollars ($2,765,026.90); and it is

**ORDERED** that of the Two Million, seven hundred sixty-five thousand, twenty-six and 90/100 Dollars ($2,765,026.90) of Compaq's attorneys fees that, pursuant to Title 28 United States Code Section 1927, Ergonome's former lead counsel, Kent A. Rowald and his law firms, Vaden, Eickenroht & Thompson, LLP and Felsman, Bradley, Vaden, Gunter & Dillon shall be jointly and severally liable with Ergonome and with each other to Compaq for attorneys fees of One hundred one thousand, eight hundred twenty-two and 75/100 Dollars ($101,822.75), the excess fees reasonably incurred by Compaq because of the unreasonable and vexatious conduct of Rowald and his firms.

**THIS IS A FINAL JUDGMENT**