NICHOLS INSTITUTE DIAGNOSTICS, INC., a California Corporation, Plaintiff,

v.

SCANTIBODIES CLINICAL LABORATORY, INC., a California Corporation; Scantibodies Laboratory, Inc., a California Corporation; and Does 1 through 10, Defendants.

No. CIV. 02CV0046–B (LAB).

United States District Court, S.D. California.

Sept. 11, 2002.

Douglas E. Olson, Vicki Gee Norton, Brobeck, Phlegar and Harrison, San Diego, CA, for plaintiff.

Russell Alan Gold, Luce, Forward, Hamilton and Scripps, David C. Doyle, Shannon Marie Dailey, Morrison and Foerster, San Diego, CA, for defendants.

**ORDER DENYING AS MOOT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO 35 U.S.C. § 102(f) FOR NONJOINDER OF CO–INVENTOR, DENYING REQUEST FOR STAY, AND ORDERING PLAINTIFF TO FILE AMENDED COMPLAINT**

BREWSTER, Senior District Judge.

## I. INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment for Non–Joinder

of Co–Inventor pursuant to 35 U.S.C. § 102(f), which came on for hearing before the Court on August 26, 2002. For the reasons below, the Court denies Defendants' motion and orders Plaintiff to file an amended complaint.

## II. BACKGROUND

Nichols Institute Diagnostics, Inc. ("Nichols") is the sole licensee of U.S. Patent No. 6,030,790 ("the '790 Patent"). In its complaint, Nichols states a single claim for infringement of the '790 Patent against Scantibodies Clinical Laboratory, Inc. and Scantibodies Laboratory, Inc. ("Scantibodies" or "Defendants").

The subject matter of the '790 Patent was also the subject matter of international patent application number WO 96/10041 ("the international application"), which was filed under the Patent Cooperation Treaty ("PCT"). The PCT provides a procedure for filing a patent application on the international level so that subsequent applications in different nations can claim priority based on the filing date for the international application. 4 Donald S. Chisum, *Chisum on Patents* § 14.02[4]. However, the PCT "does not alter the substantive requirements of patentability" in other countries. *Id.* Subsequent applications in

the United States are referred to as the "national stage" of the international application. 37 C.F.R. § 1.491 (2001).

The '790 Patent is the national stage of international application number WO 96/10041. As is required by the PCT, the '790 application covers the same subject matter as its international counterpart. However, whereas the international application designates as inventors four individuals (Drs. Wolf–Georg Forssmann, Knut Adermann, Dieter Hock, and Marcus Mägerlein), the '790 Patent designates only three (Drs. Adermann, Hock, and Mägerlein). The parties agree that Dr. Wolf–Georg Forssmann is, in fact, a co-inventor of the subject matter of the '790 Patent, and that his name was omitted in the inventorship designation.

Defendants filed the instant summary judgment motion on May 16, 2002, contending that the '790 Patent was invalid under 35 U.S.C. § 102(f)[1] for non-joinder of a co-inventor. While the motion was pending, on July 1, 2002, Pharis Biotec GmbH, assignee of the '790 Patent, along with the named inventors, Drs. Adermann, Hock, and Mägerlein, and the omitted inventor, Dr. Forssmann, applied to the United States Patent and Trademark Office for correction of inventorship pursuant to 35 U.S.C. § 256[2] and 37 C.F.R.

---

1. 35 U.S.C. § 102(f) provides that "[a] person shall be entitled to a patent unless—... (f) he did not himself invent the subject matter sought to be patented."

2. 35 U.S.C. § 256 provides:
Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

§ 1.324(a),[3] seeking to add Dr. Forssmann to the '790 Patent.[4] They provided the PTO with copies of the complaint in this action, the answer, Scantibodies' Notice of Motion and Motion for Summary Judgment for Nonjoinder of Co–Inventor, and Scantibodies' Memorandum of Points and Authorities in Support of Motion for Summary Judgment. (Dec. James T. Carmichael Supp. Pl.'s Opp. Mot. Summ. J., Ex. 1.)

On July 9, 2002, during the parties' early neutral evaluation conference pursuant to Rule 26(f), Federal Rules of Civil Procedure, Nichols revealed that there was a pending application for a correction certificate. On July 15th and 16th Scantibodies sent the PTO letters objecting to the certificate's issuance. (Dec. David C. Doyle Supp. Reply Exs. F, G.) Over Scantibodies' strenuous objections that the PTO lacked authority to issue the correction certificate while the nonjoinder issue was before this Court, the PTO approved the application. The Certificate of Correction adding Dr. Forssmann to the '790 Patent was published on August 6, 2002. (Dec. Vicki G. Norton Supp. Pl.'s Sur-reply in Opp. Ex. 10.)

## III. STANDARD OF LAW

### A. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judg-ment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When the facts controlling the application of a rule of law are undisputed, the application raises a question of law for the court. *Delbon Radiology v. Turlock Diagnostic Ctr.*, 839 F.Supp. 1388, 1391 (E.D.Cal.1993). Summary judgment is appropriate in such cases. *Id.* Such purely legal issues appropriate for resolution in a motion for summary judgment include the interpretation of a statute or regulation. *Edwards v. Aguillard*, 482 U.S. 578, 581– 582, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987).

## IV. MOTION FOR SUMMARY JUDGMENT FOR NONJOINDER OF CO–INVENTOR

### A. Arguments

In their first summary judgment brief, which was filed before the parties to the patent applied for a Certificate of Correction in the PTO, Scantibodies sought summary judgment pursuant to 35 U.S.C. § 102(f), under which a patent is rendered invalid for omission of a co-inventor, arguing that the '790 Patent was invalid for failure to designate Dr. Forssmann as a co-inventor. *See Pannu v. Iolab Corp.*,

---

3. "Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his or her part, the Commissioner may, on petition, or on order of a court before which such matter is called in question, issue a certificate naming only the actual inventor or inventors." 37 C.F.R. § 1.324(a).

4. The parties to the patent also sought a Certificate of Correction to add certain language to the body of the '790 Patent, a procedure that they designated as authorized by PTO Form 1050, which appears to be the form used by the PTO for correction of an applicant's mistake pursuant to 37 C.F.R. § 1.323. (Dec. James T. Carmichael Supp. Pl.'s Opp. Mot. Summ. J. Ex. 1, Tab 6.). The propriety of the PTO's making this correction has not been challenged.

155 F.3d 1344, 1350 (Fed.Cir.1998). Scantibodies additionally requested that should the Court grant their motion, and should Nichols choose to correct the error under 35 U.S.C. § 256, that Nichols be required to move for correction in this Court, and that the Court stay the rest of the infringement action pending resolution of the motion for correction.

Nichols, in its opposition brief, which was filed after the parties to the '790 Patent applied for correction in the PTO, conceded that Dr. Forssmann is a co-inventor of the '709 Patent, but contended that Defendants' motion under § 102(f) was mooted by the PTO's issuance of a Certificate of Correction adding him to the patent.

In the subsequent volley of briefs,[5] Scantibodies and Nichols have hotly contested the propriety of the parties to the patent[6] seeking correction from the PTO during pendency of a motion in which the issue of the patent's invalidity for nonjoinder of a co-inventor under § 102(f) is raised. Scantibodies argues that § 256 does not permit parties to seek relief from the PTO when the nonjoinder issue has been raised before a district court. Instead, urges Scantibodies, correction for nonjoinder under § 256 is the exclusive province of the district court where the nonjoinder issue was first raised. Based on this reading of § 256, Scantibodies contends that the Certificate of Correction is invalid and that the Court should sanction Nichols for "ex parte forum shopping" under Rule 37(c)(1) of the Federal Rules of Civil Procedure.

Of particular concern to Scantibodies is the difference in the scope of correction proceedings before the PTO and a motion for correction in a district court. Under § 256, correction of a patent is permissible only if the omitted inventor acted without deceptive intent. *Stark v. Advanced Magnetics, Inc.,* 119 F.3d 1551, 1553 (Fed.Cir. 1997). Although both the PTO and the district court are under the same statutory obligation to determine a lack of deceptive intent, *id.,* the PTO's procedures for determining that issue are far more limited than those available in a district court. To show lack of deceptive intent, the PTO requires only that the omitted inventor submit a *pro forma* declaration stating that the error of nonjoinder was committed without deceptive intent. U.S. Patent and Trademark Office, U.S. Dep't of Commerce, *Manual of Patent Examining Procedure* § 1481 (8th ed.2001). Indeed, in a correction proceeding before the PTO, "the examiner *will not make any comment* as to whether or not it appears that there was in fact deceptive intention" and must find a lack of deception so long as the omitted inventor provides the required statement. *Id.* (emphasis in original). Nor does the PTO have a procedure for allowing alleged infringers to participate in correction proceedings and present evidence of the omitted inventor's deceptive intent. *See id.;* 37 C.F.R. § 1.324(b). Instead, as long as there is no dispute among all the inventors, omitted inventors, and assignees, if any, the patent's correction by the PTO is essentially a foregone conclusion. Such was the case in the correction of the '790 Patent.

By contrast, district courts presented with motions for correction under § 256 are required to take evidence, have a

---

**5.** The Court permitted Nichols to file a sur-reply and Scantibodies to file a response to Nichols's sur-reply.

**6.** By "parties to the patent" the Court means the named inventors, omitted co-inventor, and any assignees.

"hearing," *see* 35 U.S.C. § 256, and determine whether, as a matter of fact, the omitted inventor acted with deceptive intent. *See Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1317–1318 (Fed.Cir.2000) (discussing procedure followed by district court for correction of inventorship under § 256). District courts are empowered to adjudicate contested motions for correction brought by the parties to a patent, *see MCV, Inc. v. King–Seeley Thermos Co.*, 870 F.2d 1568, 1570 (Fed.Cir.1989), can order correction over objection of any of the parties to the patent, *Iowa State Univ. Research Foundation, Inc. v. Sperry Rand Corp.*, 444 F.2d 406, 408 (4th Cir.1971), *cited with approval by Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1553 (Fed.Cir.1997), and have the authority to permit alleged infringers to participate in correction proceedings. *See Atmel v. Macronix Amer., Inc.*, No. C–97–02920, slip op. at 18–20 (N.D.Cal. May 25, 2000) (permitting alleged infringer in a different action to intervene in correction proceedings pursuant to Rule 24(b) of Federal Rules of Civil Procedure).

Scantibodies claims to have evidence that Dr. Forssmann acted with deceptive intent in failing to designate himself as a co-inventor of the subject matter of the '790 Patent.[7] Because the PTO does not permit alleged infringers to participate in correction proceedings, it was not able to present its evidence of deceptive intent as grounds for denying correction under § 256. Scantibodies contends that the parties to the patent were thereby permit-

ted to evade confronting Scantibodies' evidence of Dr. Forssmann's deceptive intent, and that Scantibodies thereby wrongly lost its opportunity to contest correction under § 256 as well as its corresponding defense that the '790 Patent is invalid under § 102(f). Scantibodies argues that once the issue of nonjoinder under § 102(f) is brought before a court, § 256 requires that correction of the error can be had only in that court and not from the PTO. Therefore, contends Scantibodies, the PTO was without authority to correct the '790 Patent, and the Certificate of Correction is invalid. Moreover, Scantibodies requests that the Court sanction Nichols for its participation in the correction of the patent[8] (which Scantibodies describes as "*ex parte* forum shopping") by excluding the Certificate of Correction as evidence to be considered in this summary judgment motion.

### B. Analysis

Scantibodies seeks summary judgment that the '790 Patent is invalid under 35 U.S.C. § 102(f) for failure to name Dr. Forssmann as a co-inventor. A district court presented with a motion for summary judgment on grounds that a patent is invalid pursuant to § 102(f) decides only whether the facts demonstrate that a co-inventor was omitted from the patent. *Pannu*, 155 F.3d at 1349. If the court finds that a co-inventor was not omitted (as, for example, when it determines that the omitted person was not an inventor), the patent is not rendered invalid for that

---

7. There has been no discovery on the issue of Dr. Forssmann's deceptive intent. Scantibodies' current theory is that Dr. Forssmann, who apparently is owner of the assignee, intentionally omitted himself as an inventor so that he could qualify for reduced patent appli-

cation fees. *See* Dec. David C. Doyle Reply Supp. Mot. Summ. J. Ex. A.

8. As a mere licensee of the patent, Nichols took no role in the PTO correction proceedings.

reason. If the court finds that a co-inventor was omitted, it must find the patent to be invalid under § 102(f).

Upon declaring the patent invalid under § 102(f), however, the court is then required to give the parties to the patent an opportunity to correct the error under 35 U.S.C. § 256. *Pannu,* 155 F.3d at 1350. Once the patent is corrected pursuant to § 256, the asserted invalidity of the patent for purposes of § 102(f) is cured.

■ There is no issue of fact here regarding Dr. Forssmann's inventorship of the subject matter of the '790 Patent. Either the patent has been properly corrected under § 256, and the inventorship issue under § 102(f) has been rendered moot, or else the patent was not properly corrected under § 256, and the Court must declare it invalid under § 102(f). Thus, the only issue before the Court is a legal one, namely: in an infringement action, where the defendant raises the issue of invalidity of the patent under § 102(f) for nonjoinder of a co-inventor, and the parties do not contest that an inventor was omitted, does § 256 require that the parties to the patent seek correction exclusively in the district court where the issue of nonjoinder has been raised? The Court finds that the answer to this question is "no."

The issue is one of first impression. Scantibodies does not cite, and the Court has been unable to find, a case interpreting § 256 as eliminating the possibility of correction by petition to the PTO where the issue of nonjoinder under § 102(f) has been first raised by an alleged infringer in a motion directed to a district court.

It appears to the Court that § 256 permits correction either by the PTO or by the district court during pending infringement litigation, and even where a motion for invalidity under § 102(f) has been filed by an alleged infringer. First, the Court must look to the language of the statute to ascertain Congress's intent. *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). Here, the language of § 256 provides two means of obtaining the remedy of correction without reference to any limiting circumstances. Read literally, § 256 provides for correction by either the PTO or the district court. *See Iowa State Univ. Research Foundation,* 444 F.2d at 410 (counseling that § 256 is to be read "literally"). There simply is no literal or explicit limiting provision in § 256 stating that only the district court can correct a patent after a nonjoinder issue has been raised first in infringement litigation.[9]

Second, the Court's reading of § 256 is consistent with Congress' intent regarding

---

**9.** The legislative history of § 256 is inconclusive. Congressional commentary on the purpose of the act is limited and does not discuss any distinction in the availability of correction by the PTO and by a district court. *See* Sen. Rep. No.1979, 82nd Cong., 2d Sess. (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394, 2401.

The only available evidence of the intended roles of the PTO and district court under § 256 is from lectures by the drafter of the bill, P.J. Federico, Examiner–in–Chief of the Patent Office, which he gave after the Patent Act of 1952 was passed, and which were published in 35 U.S.C.A., p. 1 (1954). *See Iowa State Univ. Research Foundation,* 444

F.2d at 408. While his comments are not part of the legislative history of the Act, they are nevertheless "entitled to the weight ordinarily accorded an acknowledged authority in his field." *Id.* at 409. The only distinction Federico noted is that correction can be made by the PTO where all the parties, including the assignee, concur in the correction. J.P. Federico, Commentary on the New Patent Act, 75 JPTOS 161, 211 (1993) (reprinted from 35 U.S.C.A. (1954 ed.)). "If they do not concur, the correction can be made only on order of a court as provided in the third paragraph [of § 256]." *Id.*

the more general purpose of the statute. In an opinion whose reasoning has been approved by the Federal Circuit, the Fourth Circuit held that § 256 is to be interpreted so as to "achieve the broad remedial purposes Congress intended." *Iowa State Univ. Research Foundation,* 444 F.2d at 410. It is consistent with the statute's "broad remedial purposes" that the procedure of petitioning the PTO for correction should not be foreclosed because the patent's validity has been challenged first in litigation.

Third, this interpretation of § 256 is consistent with Federal Circuit authority on analogous issues. As a general proposition, the Federal Circuit has found no jurisdictional problem where the PTO takes action on a patent that is the subject of an infringement action. Instead, "challenging validity in a court and requesting PTO reexamination 'are concepts not in conflict.'" *Ethicon v. Quigg,* 849 F.2d 1422, 1428 (Fed.Cir.1988), *quoting In re Etter,* 756 F.2d 852, 857 (Fed.Cir.1985) (en banc). It seems reasonable to infer that an alleged infringer's challenge to the validity of a patent in a court and the patent owners' requesting PTO correction are also "concepts not in conflict."

Fourth, this conclusion is consistent with the procedures pursuant to § 256 that have been condoned by other district courts. Courts seem to have interpreted § 256 as permitting correction by the PTO during pending infringement litigation. *See, e.g., Borden, Inc. v. Occidental Petroleum Corp.,* 381 F.Supp. 1178, 1196 (S.D.Tex.1974) (plaintiff filed "ex parte petition seeking a Certificate of Correction" pursuant to § 256 two years after it filed infringement action in district court); *Modine Mfg. Co. v. The Allen Group,* 5 U.S.P.Q.2d 1922, 1929, 1987 WL 123993

(N.D.Cal.1987) (party to patent successfully applied for Certificate of Correction one year after infringement suit filed), *vacated on other grounds,* 8 U.S.P.Q.2d 1622, 1988 WL 281562 (N.D.Cal.1988). Though these cases do not involve the situation where a motion for summary judgment pursuant to § 102(f) was pending, they still demonstrate that the general presence of invalidity issues before a court does not necessarily limit the PTO's jurisdiction to correct errors under § 256.

Scantibodies relies on *Pannu* as requiring its proposed reading of the statute. However, in that case the Federal Circuit merely held that a district court cannot avoid declaring a patent invalid under § 102(f) merely because the patent appears correctable under § 256. *Pannu,* 155 F.3d at 1350. The *Pannu* court stated that where a district court finds a patent invalid due to nonjoinder, "[n]onjoinder may be corrected 'on notice and hearing of all parties concerned' ...." *Id.* Scantibodies contends that the reference to a hearing means that the subsequent correction can only be made by motion and hearing in the district court. Scantibodies' interpretation stretches the quoted language too far.

Scantibodies also claims that its due process rights will be compromised if the Court finds that § 256 permits parties to a patent to procure a Certificate of Correction during a pending motion for invalidity under § 102(f). Scantibodies contends that if the Court finds the Certificate of Correction was validly obtained, it will have lost its opportunity to object to correction and to present its evidence of Dr. Forssmann's deceptive intent in leaving himself off the '790 Patent.

The Court finds no due process problem. Under Civil Local Rule 15.1, every plead-

ing must be "complete in itself" without reference to other documents. The Court will therefore require Nichols to amend its complaint to add the Certificate of Correction as an attachment to the complaint so that the complaint states a claim for infringement of the '790 Patent as corrected. Scantibodies can thereafter raise any affirmative defenses, including invalidity, based on Dr. Forssmann's alleged deception in omitting his name as a co-inventor. *See, e.g., Borden, Inc.,* 381 F.Supp. at 1207 (finding Certificate of Correction issued by the PTO invalid). That issue is not precluded by the PTO's issuance of a Certificate of Correction here.

Finally, Scantibodies maintains that the doctrine of constitutional avoidance requires the Court to interpret § 256 as placing the jurisdiction to correct a patent exclusively in the district court when the patent is the subject of litigation. According to Scantibodies, interpreting § 256 to permit correction by the PTO during a pending invalidity motion for nonjoinder of a co-inventor would "raise[ ] Article III concerns." Scantibodies' Response to Surreply at 9, *citing McCormick Harvesting Machine Co. v. C Aultman & Co.,* 169 U.S. 606, 608, 18 S.Ct. 443, 42 L.Ed. 875 (1898). As Scantibodies correctly notes, Article III, Section 1 of the United States Constitution vests judicial power in federal courts. Scantibodies' contention is essentially this: 1) Article III makes only the judicial branch competent to resolve "private rights disputes;" 2) a patent infringement action is such a private rights dispute; 3) any issue of invalidity because of nonjoinder raised in the infringement action becomes part of that private rights

dispute; and 4) correction of the nonjoinder issue is also part of the infringement action, and therefore, the alleged infringer's dispute over correction creates a private rights dispute that can only be decided by a court.

The problem with Scantibodies' logic lies in the fourth step of its reasoning as just described above. A motion for correction for nonjoinder of a co-inventor is not the same "private rights dispute" as the infringement action in which the nonjoinder issue is raised.[10] Instead, it is a corollary proceeding requiring the participation of different parties. *See MCV, Inc.,* 870 F.2d at 1570 (holding that a complaint stating only a cause of action for correction under § 256 states an independent claim that "arises under" federal patent law).

■ An alleged infringer is not a necessary party to a motion for correction under § 256. While the named inventors, omitted inventors, and assignees are parties who must be given notice and an opportunity to participate in correction under § 256, *Iowa State Univ. Research Foundation,* 444 F.2d at 410, it is not clear that § 256 requires the participation of an alleged infringer. Rather, it appears that the alleged infringer is *not* a party § 256 such that its participation is required before the patent can be corrected. *See Atmel,* No. C–97–02920, slip op. at 19 (declining to join alleged infringer in correction action as necessary party).

Indeed, a party to a patent can file a complaint in a district court stating only a claim for correction of the patent under § 256. *MCV, Inc.,* 870 F.2d at 1570. Such an action can be maintained without

---

10. The Court assumes *arguendo* that correction proceedings under § 256 involve "private rights." *See Northern Pipeline Const. Co. v.* *Marathon Pipe Line Co.,* 458 U.S. 50, 69–70, 71, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

giving notice to or requiring the participation of any alleged infringer. *Atmel,* No. C–97–02920, slip op. at 10 (notice of motion for correction under § 256 need not be given to alleged infringer), *citing Rival Mfg. Co. v. Dazey Products Co.,* 358 F.Supp. 91, 93 (W.D.Mo.1973), *overruled on other grounds by Stark v. Advanced Magnetics, Inc.,* 29 F.3d 1570, 1574–1575 (Fed.Cir.1994), *FFOC Co. v. Invent A.G.,* 882 F.Supp. 642, 650 (E.D.Mich.1994), *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 12 F.Supp.2d 69, 89 (D.Mass. 1998). It follows that an alleged infringer is not a necessary party for correction of a patent under § 256. *See id.* at 19 (refusing to permit alleged infringer to intervene as a matter of right in § 256 correction motion).

Because the alleged infringer is not a necessary party to a claim for correction under § 256, the fact that it does not concur in the decision to correct a patent does not create a correction dispute under § 256. Instead, a dispute necessitating judicial action under § 256 is created only where the parties to the patent (again, the named inventors, omitted inventors, and assignees) contest correction. This is the distinction drawn by § 256. Where the parties to the patent do not have a dispute over correction under § 256, they may petition to the PTO for correction. Where the parties to the patent do have a dispute over correcting under § 256, they must move for correction in the district court. *See MCV, Inc.,* 870 F.2d at 1570 ("If the patentees and their assignees agree, correction can be had on application to the Commissioner. In the event consensus is not attained, however, the second para-

graph of section 256 permits redress in federal court."); *Iowa State Univ. Research Foundation,* 444 F.2d at 410; *Stark,* 119 F.3d at 1553. The alleged infringer's objection to correction does not create a correction "dispute" under § 256, and therefore does not place jurisdiction to correct the patent exclusively in the district court under Article III.

■ It is true that alleged infringers have an important interest in having standing to contest the validity of a patent for any reason, including problems with the patent's inventorship. However, Scantibodies has not been deprived of the right to litigate this issue. Nor has Scantibodies shown that they have a constitutional right to litigate the issue of correction in a collateral § 256 proceeding. Instead, an alleged infringer may raise any issues regarding the invalidity of the patent, and even regarding the invalidity of the Certificate of Correction, as defenses in the main infringement action. *See, e.g., Modine Mfg. Co.,* 5 U.S.P.Q.2d at 1930 (analyzing merits of defendant's challenge to validity of Certificate of Correction issued by PTO pursuant to § 256); *Borden, Inc. v. Occidental Petroleum Corp.,* 381 F.Supp. 1178, 1206 (S.D.Tex.1974) (reviewing propriety of PTO's issuance of Certificate of Correction removing person as joint inventor).

■ Because there was no impropriety in the parties to the patent requesting a Certificate of Correction from the PTO during pendency of Scantibodies' summary judgment motion, nor in the PTO's issuance of the same, the Court finds that the alleged defect in inventorship of the '790 Patent has been facially corrected.[11]

11. The Court decides this motion based on the record before it at the time it took this matter under submission. *See* 10A Charles

Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2721 (1998). Evidence that the parties to

Scantibodies' motion for summary judgment for nonjoinder of a co-inventor has been rendered moot.[12]

## V. REQUEST FOR STAY

In its initial brief in support of its motion for summary judgment, Scantibodies requested that the Court stay all discovery and other proceedings on all other infringement issues in this case until Nichols's anticipated motion for correction under § 256 was resolved. Scantibodies contended during oral argument that it still believes the Court should stay this action pending resolution of the issue of whether Dr. Forssmann acted with deceptive intent in initially omitting himself

as an inventor in the '790 Patent, and whether he fraudulently procured a Certificate of Correction from the PTO.

This Court has inherent discretion to control the disposition of the causes on its docket by staying proceedings before it. *Landis v. North Am. Co.*, 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L.Ed. 153 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* Here, the Court finds no compelling reason to stay this case until the issue of Dr. Forssmann's alleged deceptive intent can be resolved. Defendants can claim invalidity by separate affirmative defense. Discovery on

the patent successfully procured a Certificate of Correction from the PTO after Scantibodies filed this motion is therefore properly considered by the Court in deciding this motion.

Additionally, Scantibodies has suggested that Nichols's failure to disclose the application before the PTO as required by Rule 26(a)(1) is a sanctionable offense. To the extent Scantibodies seeks Rule 11 sanctions, it must file a noticed motion before the merits of its arguments will be considered. Scantibodies argues that Nichols should be punished for engaging in "forum shopping." The Court disagrees. While Nichols likely is responsible for informing Drs. Forssmann, Adermann, Hock, and Mägerlein, as well as Pharis, of the problem with inventorship in the '790 Patent, Nichols itself did not go to the PTO to seek correction, as stated above in footnote 8.

Second, Scantibodies argues that Nichols should be sanctioned pursuant to Rule 37(c)(1) for failure to disclose the application as required by Rule 26(a). The Court declines to rule on Scantibodies' request for sanctions under Rule 37(c)(1) at this time. First, the record before the Court on precisely how and when Nichols learned of the PTO application is not sufficiently developed to make a determination whether Nichols had cause for failing to disclose its existence. *See* FED. R. CIV. P. 26(a)(1) (party must make initial disclosures at or within 14 days after the Rule 26(f) conference; and a "party must

make its initial disclosures based on the information then reasonably available to it...."). Second, any sanction for failure to disclose the application does not affect the Court's decision on this motion. The Court does not consider the PTO application in arriving at its decision on the merits of this motion; instead, it considers the actual Certificate of Correction issued by the PTO. Scantibodies does not contend that Nichols failed to timely disclose the issuance of the Certificate of Correction. Scantibodies is furthermore advised that the magistrate court is the appropriate forum for resolving its contention that Nichols has violated its Rule 26(a) obligations.

12. Scantibodies requests that the Court declare the PTO's correction of the '790 Patent to be a nullity, and demanded that § 256 correction proceedings be commenced in this Court. Scantibodies essentially seeks a mini-trial within the instant case on the issue of correction under § 256. Such a proceeding would necessitate the participation of the inventors and assignee, the opportunity for discovery on the issue, and would require the delay of this infringement case for an unspecified period of time. Because the Court finds that the PTO's issuance of a Certificate of Correction was proper, it does not address Scantibodies' proposed procedure for correcting the '790 Patent.

that issue, and any motions directed to resolving it, can be carried on in conjunction with discovery and other litigation proceedings on the other issues in this case.

## VI. DISPOSITION

Scantibodies' Motion for Summary Judgment Pursuant to 35 U.S.C. § 102(f) for Nonjoinder of Co-inventor is DENIED as moot. Scantibodies' request for stay is DENIED.

Nichols is hereby ORDERED to amend its complaint in order to attach all Certificates of Correction of the '790 Patent. Defendants shall have twenty days from service of the amended complaint to answer or otherwise appear.

IT IS SO ORDERED.